**Derek A. Soinski (SBN 293747)**
**REDWOOD LAW GROUP, APC**
11440 W Bernardo Ct., Ste. 300
San Diego, California 92127
Phone: 858-533-1889
E-Mail: derek@redwoodlawgroup.com

**Ahren A. Tiller (SBN 250608)**
**BLC LAW CENTER**
1230 Columbia St. Ste. 1100
San Diego, CA 92101
Phone: 619-894-8831
E-mail: ahren.tiller@blc-sd.com

[Additional Counsel On Signature Page]

Attorneys for Plaintiff,
MAHSHID WADEEA

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHSHID WADEEA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MERCEDES-BENZ USA, LLC, a Delaware Corporation; MERCEDES-BENZ GROUP AG, a German Corporation (f/k/a DAIMLER AG); MERCEDES-BENZ AG, a German Corporation, <br><br> Defendants. | Case No.:  3:24-cv-01587-H-DDL <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> FOR VIOLATIONS OF: <br><br> (1) SONG BEVERLY CONSUMER WARRANTY ACT, CAL. CIV. CODE §§ 1790, *et seq*.; <br> (2) California's unfair competition law, cal. bus. & Prof. Code §§ 17200, *et seq*.; <br> (3) Breach of Express warranty; <br> (4) Breach of IMPLIED warranty; <br> (5) Unjust Enrichment; <br> (6) FRAUDULENT CONCEALMENT. <br><br> **JURY TRIAL DEMANDED** <br><br> Honorable Marilyn L. Huff |

**INTRODUCTION**

1.  MAHSHID WADEEA ("Plaintiff"), by and through her counsel of record, brings this class action against MERCEDES-BENZ USA, LLC ("MBUSA"); MERCEDES-BENZ GROUP AG, a German Corporation (f/k/a DAIMLER AG) ("MBGA"); and MERCEDES-BENZ AG, a German Corporation ("MBA") (collectively, "Defendants" or "Mercedes") pertaining to actions by Defendants in collectively designing, manufacturing, marketing, distributing, selling, and leasing motor vehicles within the State of California with materially defective wheels and tires ("Wheel Configuration Defect"), which pose a significant reliability and safety concern for purchasers and lessees of the motor vehicles and the public at large, and for Defendants' failure to remedy the defect. The model of vehicles affected include at least the Mercedes-Benz S-Class vehicles, model years 2021, 2022, 2023 and 2024 (the "Class Vehicles").

2.  The S-Class, formerly known as *Sonderklass* (German for "special class"), is part of Defendants' full-sized luxury sedans, falling within Defendants' top-line models and one of their flagship vehicles.

3.  The affected vehicles have an MSRP exceeding $100,000. The MSRP for the 2023 S580 4MATIC Sedan, for instance, was $124,000.

4.  MBUSA represents the S-Class vehicles as "not just the pinnacle of the automobile but the forefront."[1] However, Defendants have turned a blind eye to frequent and recurring problems with the tires on S-Class vehicles at the expense of California consumers who often are forced to replace the tires after only driving their Mercedes-Benz luxury vehicles within a few thousand miles of use.

---

[1] https://www.mbusa.com/en/vehicles/class/s-class/sedan#:~:text=With%20every%20year%2C%20an%20S,the%20automobile%20%20but%20the%20forefront (last accessed on February 2, 2024).

5.  Many consumers have even experienced frequent tire blowouts.

6.  Despite Defendants' knowledge of the defect, they have continued to sell and lease vehicles with defective tires for the S-Class vehicles, including model S580.

7.  Plaintiff and the Class Members have suffered economic injury at the time of purchase due to the existence of the Wheel Configuration Defect.

8.  Plaintiff brings this action to require Defendants to conform their conduct to the law, honor their warranties, repair the defective vehicles, and reimburse and compensate Plaintiff and similarly affected owners and lessees of the Class Vehicles.

9.  Specifically, Plaintiff alleges that Defendants violated California's Song Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.* ("SBA"); California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); breached an express warranty; breached an implied warranty; and were unjustly enrichment.

10. Plaintiff makes the allegations contained herein on information and belief, except as to those allegations regarding herself, or Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

11. Unless otherwise indicated, the use of Defendants' names in this Class Action Complaint includes all of their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**PARTIES**

12. Plaintiff is a natural person. When Plaintiff purchased a Class Vehicle and first experienced the alleged-of issues with that Class Vehicle, she resided in El Cajon, California, which is located in the County of San Diego, in the State of California.

13. Plaintiff is a "buyer" of consumer goods under Cal. Civ. Code § 1791(b).

14. MBUSA is a Delaware Corporation created under the laws of the State of Delaware with its main headquarters in Atlanta, Georgia. MBUSA's primary business purpose is to market, distribute, sell, and warrant Mercedes-Benz automobiles.

15. MBA is a German corporation with its principal place of business in Stuttgart, Germany. MBA is a wholly-owned subsidiary of Mercedes-Benz Group AG and is responsible for the design, development, engineering, testing, and manufacturing of Mercedes-Benz passenger vehicles, including the Class Vehicles. MBA directs and controls the activities of MBUSA in the United States, including the distribution, marketing, sales, and servicing of the Class Vehicles.

16. MBGA is a German corporation with its principal place of business in Stuttgart, Germany. MBGA is the parent company of MBA and MBUSA. MBGA oversees the global operations of the Mercedes-Benz brand, including research, development, manufacturing, and strategic decisions related to vehicle defects and warranties. MBGA exercises control over MBA and MBUSA, including decisions related to the design, manufacturing, and handling of defects in the Class Vehicles.

17. At all times relevant hereto, Defendants were collectively engaged in the design, manufacture, assembly, testing, marketing, distribution, sale, leasing, and servicing of motor vehicles, including the Class Vehicles, in the United States, including California.

18. MBA designs, manufactures, and engineers the Class Vehicles in Germany. MBUSA, as the U.S. subsidiary, imports, distributes, markets, sells, leases, and services the Class Vehicles in the United States, including California. MBGA, as the parent company, oversees and directs the global strategy, including decisions on vehicle defects, warranties, and recalls.

19. At all times mentioned herein, each defendant was the principal, agent or

employee of each other defendant, and in acting as such principal, or within the course and scope of such employment or agency, took some part in the acts and omissions set forth hereinafter, by reason of which each defendant is liable to Plaintiff and the proposed class and/or for the general public for the relief prayed for herein. At all times relevant herein, each defendant ratified the unlawful conduct of the other defendants, their agents and employees, by failing to repudiate the misconduct and by accepting the benefits of the transactions in question with knowledge of the wrongdoing and thereby aided, abetted, and/or ratified the violations of law alleged throughout this Complaint.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: (i) there are 100 or more Class Members; (ii) the aggregate amount in controversy exceeds $5,000,000.00 (exclusive of interest and costs); and (iii) there is minimal diversity because at least one Plaintiff and one Defendant are citizens of different states.

21. This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed the Class Vehicles into the stream of commerce within California and throughout the United States. Defendants maintain systematic and continuous business contacts with this State, including through their network of authorized dealerships and service centers.

22. Venue is proper in this district because Defendants conduct business in the State of California and in this district. Defendants' commercial activities in the State of California and this district include, but are not limited to, the marketing, sale and provision of goods and services in this district and undertaking transactions in this district.

23. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, and MBUSA has at least 49 authorized dealerships within California alone and receives substantial compensation and profits from the sale of Class Vehicles in California and within this judicial district.

24. Defendants submitted to jurisdiction through the pervasive marketing, selling and servicing of Class Vehicles within California; through the encouragement of Class Vehicle purchases within California; through their purposeful cultivation of profitable relationships with customers, dealerships, service facilities, and other individuals and entities throughout California; and through their maintenance of offices and operations in California.

25. MBUSA maintains a corporate office in California at 3860 North Lakewood Blvd., Long Beach, CA 90808.

## FACTUAL ALLEGATIONS

26. Plaintiff incorporates by reference and realleges all foregoing paragraphs as if fully restated herein.

27. The Class Vehicles are substantially similar in all relevant respects; namely, all are part of the luxury S-Class; all are equipped with wheels and tires; and all suffer from a similar defect, i.e., the Wheel Configuration Defect, which poses a significant reliability and safety concern for purchasers and lessees of the motor vehicles and the public at large.

28. Instead of correcting the defect, such as using different tires or redesigning or manufacturing the Class Vehicles' wheels to configure more safely with the tires, MBUSA has continued to sell the defective Class Vehicles.

29. Upon information and belief, to date, MBUSA has not issued any formal public notice concerning the recurring tire blowouts for the Class Vehicles.

30. MBUSA has not issued a recall concerning the Class Vehicles' Wheel Configuration Defect.

31. On or about October 29, 2022, Plaintiff purchased a new 2023 Mercedes-Benz S580V4 with Vehicle Identification Number ("VIN") W1K6G7GBXPA175615 (the "Vehicle") which was manufactured, distributed, and sold by Defendants. The total consideration Plaintiff paid or agreed to pay for the Vehicle, including taxes and fees, was $178,028.08.

32. The Vehicle came with twenty-one (21) inch AMG wheels, which are performance summer tires.

33. The Vehicle was manufactured by Defendants, and Defendants provided an express warranty in connection with the sale of the Vehicle. In the express warranty, Defendants undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there was a failure in utility or performance for a specified period of time. The express warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to an authorized dealership, and the Vehicle would be repaired by Defendants or one of their designated agents.

34. The Vehicle was purchased and used primarily for personal, family, or household purposes.

35. Less than two (2) months after taking delivery of the Vehicle, and during the warranty period with only approximately 1,184 miles, the Vehicle began exhibiting signs of significant mechanical defects.

36. On December 5, 2022, Plaintiff brought the Vehicle into one of Defendants' authorized repair facilities due to a defective tire, which would not hold air and caused the Vehicle to handle unpredictably.

37. Shortly thereafter on January 11, 2023, Plaintiff again delivered the Vehicle to Defendants due to leaking tires.

38. On July 14, 2023, Plaintiff was again forced to bring the Vehicle in for repair due to defective tires "bubbling" out on the side.

39. One of the replacement tires that Plaintiff was given was the Pirelli 285/30R21.

40. On April 20, 2023, with approximately 7,098 miles, the Vehicle contained or developed additional defects indicating that the Vehicle was sold with defective safety systems, causing the Vehicle to malfunction and indicate that it detected a collision.

41. On March 22, 2024, Plaintiff experienced a tire blowout while driving, creating an unsafe and dangerous situation, again indicative of the defects in the Vehicle.

42. Plaintiff delivered the Vehicle to Defendants' authorized repair facilities on at least six (6) separate occasions, which rendered the Vehicle out of service for at least forty-six (46) days, in just the first year of ownership.

43. Plaintiff last delivered her Vehicle to one of Defendants' authorized repair facilities on June 22, 2025, because the front driver's side tire of her Vehicle blew out at approximately 38,829 miles on the odometer.

44. Since filing the original Complaint in this action, Plaintiff has taken her Vehicle to Defendants' authorized repair facilities on at least five (5) additional occasions as a result of premature tire failures, suggesting that problems with the Vehicle persist to this day.

45. Plaintiff does not feel she and her family can safely rely on the Vehicle for normal operation.

46. Plaintiff is not alone in her experiences with the Wheel Configuration Defect. Many consumers have reported experiencing problems with the tires on their vehicles sold by Defendants, including tire blowouts, which present a significant safety concern.

47. For example, one consumer complained to MBUSA about a tire blowout at 490 miles on the odometer.[2]

48. Another consumer reported 6 tire blowouts with only 6,700 miles on the odometer, for a model S580 (2022), calling it a "Serious consumer safety issue."[3] This was posted on MBUSA's Reddit page, "r/Mercedes_benz," approximately one (1) year ago. That Reddit page has approximately 173,000 members.

49. In an online forum called "Benz Forum," one consumer stated that he purchased a model S580 (2022) with 21-inch wheels and experienced tire blowouts on two separate occasions after driving less than 3,000 miles, which was within the first two (2) months of purchase.[4] Reportedly, first, the passenger-side tire failed, then the rear driver's-side tire failed.

50. Another forum member noted "at least 10-15 tire changes in the last 8 months alone" for the S580 (2022), calling it a "Complete nightmare," which was posted on September 2, 2023.

51. Another forum member also stated "not a coincidence at all. All of us with S580 with 21 inch wheels have serious recurring problems," which was posted on March 16, 2023.[5]

52. One automotive complaint website concerning "Mercedes-Benz S580 Complaints" includes a report, with an incident date of January 15, 2023, stating:

---

[2] https://usautolaw.com/investigation/mercedes-benz-s580-tire-blowout (last accessed on February 2, 2024).

[3] https://www.reddit.com/r/mercedes_benz/comments/z9tk3e/s580_2022_with_21_rims_2_rims_and_6_tires_blown/?rdt=50769 (last accessed on February 2, 2024).

[4] https://www.benzforum.com/threads/2022-s580-with-21-inches-wheels.37733 (last accessed on February 2, 2024).

[5] *Id.*

The contact owns a 2022 mercedes-benz s580. The contact stated that while driving at an undisclosed speed, the vehicle vibrated violently. The low tire air pressure warning light was illuminated. The vehicle was taken to the dealer, who diagnosed a failure with the front driver's side tire. The contact was informed that bubbles had developed on the tire side wall, requiring a replacement. The vehicle was repaired, but the failure reoccurred. The vehicle was taken back to the dealer, who diagnosed an additional failure with the front driver's side wheel requiring a replacement. The vehicle was repaired, but the failure reoccurred. The vehicle was taken back to the dealer, who determined that the vehicle required tire rebalancing. The vehicle was repaired, but the failure reoccurred. The vehicle was taken back to the dealer, who determined that the vehicle required an alignment. The vehicle was repaired, but the failure reoccurred. After investigating the failure, the contact related it to nhtsa campaign number 22v194000 (suspension, power train), but the vin was not included. The manufacturer was notified of the failure, and a case was opened. The failure mileage was 300.[6]

53. On that same complaint website, another complaint, with an incident date of September 2 2023, states:

1. The tires//rims on this vehicle are causing extremely excessive tire blowouts. I have had at least 5 tire blowouts in the last 6 months alone along with 8-10 tire changes due to bubble forming on sidewall. This is a widespread issue on this vehicle in which i have read that many others are also experiencing the same. The vehicle is available for inspection. 2. A tire blowout while driving can be extremely hazardous especially on the freeway. 3. The problem with this vehicle has been confirmed with the dealer. However, they are unable to pinpoint what is exactly causing these excessive tire blowouts. 4. No, the vehicle has not been inspected. 5. No warnings prior to incidents.[7]

54. Another complaint, with an incident date of June 9, 2023, states:

---

[6] https://www.vehie.com/complaints/mercedes-benz/s580-n2659 (last accessed on February 2, 2024).

[7] *Id.*

I have had one tire blow out after traveling over a moderate pot hole, and 3 other tires that have been damaged with "bubbles" due to excessive stress from normal driving. In addition to the damaged tires, i have had 3 bent wheels all due to normal driving because the 21 inch wheels/tires on this vehicle cannot tolerate the loads during normal driving. This is a well-known defect by mercedes and i believe it is a design defect and that it is dangerous.[8]

55. Similarly, a Benz Forum member complained of 11 tire replacements with the S580 (2023) with 10,000 miles "just because I drove over a little pot hole." That forum member reported contacting MBUSA, and "they stated that nothing wrong with suspension or rims it is all about the low performance tires and it is normal for 21 inches rims as they have a narrow side wall and the only way to recommend is to talk to the dealer to replace / switch to different tire size on my expense." This was posted on January 3, 2023.[9]

56. In many cases, MBUSA refuses to replace the tires, as reported by one consumer in July of 2022, who said that Mercedes basically "told [him] to pound sand." [10]

57. The vehicle's tires are an integral component of the vehicle and, for the S580 vehicles sold by MBUSA, they can cost from $300 to more than $500 per tire to replace on the luxury S-Class vehicles.

58. The Class Vehicles must have proper and non-defective tires in order to be reliably and safely driven.

59. Sedan vehicle tires are ordinarily supposed to last at least 40,000 miles before needing to be replaced.

---

[8] *Id*.

[9] https://www.benzforum.com/threads/2022-s580-with-21-inches-wheels.37733 (last accessed on February 2, 2024).

[10] *See* https://mbworld.org/forums/s-class-w223/845213-those-experienced-tire-blowouts-21n-pirellis.html (last accessed on February 2, 2024).

60. Reasonable consumers expect that vehicle tires will not fail after only a few hundred to a few thousand miles of use. Furthermore, reasonable consumers do not expect the vehicle tires to experience frequent blowouts.

61. The Wheel Configuration Defect on the Class Vehicles are improperly designed and/or manufactured, and as a result, the tires can and often due fail well before the end of their life expectancy.

62. The premature failure of the tires on the Class Vehicles poses a safety risk and other inconveniences, and otherwise impairs the utility and value of the Class Vehicles which are marketed as at the forefront of automobiles.

63. Defendants should not have used the wheels and tires on the S-Class models and/or should have designed the Class Vehicles so as to be free from the Wheel Configuration Defect, when the wheels and tires are included for use with the Class Vehicles.

64. Defendants should have informed Plaintiff and the Class Members of the Wheel Configuration Defect rather than concealing it from them, including after several instances of premature tire failure.

65. Defendants have superior knowledge than the ordinary reasonable consumer when it comes to problems with the tires used for at least some of the S-Class models. By simply looking at the Class Vehicles, ordinary reasonable consumers would not know that the tire on those vehicles are prone to fail prematurely.

66. Defendants intended to mislead, and did mislead, Plaintiff and the Class Members through their omissions and concealment of the Wheel Configuration Defect, including the frequency with which the tires failed, thereby increasing their share of the luxury automobile market and avoiding the expense of using different tires and/or designing the Class Vehicles in a way that the tires were not prone to fail prematurely.

67. Defendants' misconduct created and sustained an increased market demand for the Class Vehicles by not disclosing the known Wheel Configuration Defect.

68. Had ordinary reasonable consumers been made aware of the Wheel Configuration Defect, they would consider it an important and material fact in deciding to pay for the luxury Class Vehicles that have an MSRP exceeding $100,000, including whether to purchase a Class Vehicle and/or how much to pay for it.

69. Plaintiff and the Class Members lost money because they did not receive what they reasonably believe they were paying for due to Defendants' misrepresentations, omissions and active concealment of the defect, while Defendants realized a commensurate unearned gain because they did not deliver to Plaintiff and the Class what they reasonably expected to receive in exchange for the money they paid.

70. As a result of Defendants' misconduct, Plaintiff and the Class suffered economic injury at the time of purchasing or leasing their Class Vehicles. In particular, either they purchased or leased vehicles that they otherwise would not have, or they paid more to own or lease their vehicles than they would have paid had the defect been timely disclosed.

71. As the existence of the Wheel Configuration Defect in the Class Vehicles would have been patently material to any reasonable consumer, Plaintiff and the Class would not have purchased or leased the Class Vehicles and/or would not have paid as much for them were the defect not concealed.

72. Plaintiff and the Class Members did not realize the benefit of the bargain in purchasing and leasing the Class Vehicles, and their expectations as ordinary reasonable consumers were not met.

73. Plaintiff and the Class Members have suffered economic loss because the defect significantly diminishes the value of the Class Vehicles.

74. Defendants have been on notice of the defective tires through customer complaints, including on MBUSA's own social media pages such as Twitter (Mercedes-Benz Press @MB_Press), as early as mid-2022.[11]

75. On information and belief, Defendants are aware of and monitor consumer forum discussions concerning their vehicles, including defective tires on S-Class vehicles.

76. Upon information and belief, dealerships have acknowledged awareness of the defective tires and have made reports of the frequent tire blowouts to MBUSA.[12] In a reported incident, the tire and vehicle manufacturer were both notified of a repeated tire blowout on a Mercedes-Benz S500 (2022), concerning DOT Number IXTY8464L.[13]

77. Defendants have experienced tire problems in the past for earlier vehicle models, such as the 2018 Mercedes GLE350, 2018 GLE43 AMG and 2018 GLE400, issuing a recall for those models as reported in or around March of 2021, as due to "process deviation" where the sidewall of the tire may break.[14]

78. More recently, MBUSA issued a recall for three (3) 2023 Mercedes-Benz AMG CLRA 45 Coupe models where the tires may unexpectedly lose air.[15]

79. MBUSA issued a recall on more than 1,300 model year 2021 Mercedes-Benz S500, S580 and Maybach S580 vehicles because the passenger frontal airbags may deactivate.[16]

80. MBUSA has not issued a recall for the wheels or tires on the Class Vehicles.

---

[11] *Id.*

[12] *Id.*

[13] https://lemberglaw.com/2022-mercedes-benz-s-class-problems-complaints-lemon (last accessed on February 2, 2024).

[14] https://www.motorsafety.org/mercedes-benz-recalls-vehicles-due-to-defective-tires (last accessed on February 2, 2024).

[15] https://www.carscoops.com/2023/04/mercedes-recalls-3-amg-cla-45s-for-tires-that-might-spontaneously-lose-all-their-air (last accessed on February 2, 2024).

[16] *Id.*

81. Upon information and belief, the only active recall for Plaintiff's Vehicle concerns "Fuel system, gasoline: delivery: fuel pump," according to a search on https://www.kbb.com/mercedes-benz/s-class/2023/recall/?vehicleid=464401, search performed on February 2, 2024.

82. Upon information and belief, Defendants have sold thousands of affected vehicles between 2021 and the present, including over thirteen thousand S-Class vehicles in California.

## TOLLING OF THE STATUTE OF LIMITATIONS

83. Plaintiff and the Class Members had no knowledge of Defendants' misconduct, including the omissions and concealment alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein.

84. Plaintiff and the Class Members did not discover and could not discover through the exercise of reasonable diligence, the fact that Defendants had sold the Class Vehicles with the concealed Wheel Configuration Defect. The limited, though probative, disclosures and revelations alleged in this Class Action Complaint required extensive investigation by counsel who suspected, and then became fully aware of, the Wheel Configuration Defect. Ordinary consumers are justified in expecting their vehicles to be free of substantial defects like the Wheel Configuration Defect at issue.

85. Plaintiff and the Class Members had no reason to suspect a Wheel Configuration Defect prior to tire failure or other signs of likely tire failure until after the Class Vehicles were purchased and driven for a time.

86. Plaintiff and the Class Members are ordinary consumers. No information published by Defendants in the public domain at the time of the purchases or leases by Plaintiff and Class Members sufficed to reveal Defendants' misconduct, including their omissions and concealment of the Wheel Configuration Defect.

87. Thus, the statute of limitations did not begin to run until Plaintiff and the Class Members first experienced the premature tire failure because they could not have reasonably discovered the defect prior to that time.

88. Defendants concealed the defect for many months, and even years, and has continued to do so to date. Defendants did and do so to create the false impression in the minds of Plaintiff and the Class Members that the Class Vehicles were merchantable and that their component parts, including the essential wheels and tires, were able to perform their intended function safely and reliably.

89. Plaintiff and the Class Members were justified in not bringing the claims earlier based on Defendants' failure to inform them of the existence, nature, extent, and scope of the tires and related Wheel Configuration Defect or its manifestations with respect to the Class Vehicles.

90. Thus, the claims asserted in this action accrued much later than the time Plaintiff and the Class Members purchased and leased their Class Vehicles, and this action is timely.

91. In the alternative, and based upon the same facts alleged above, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted here.

92. Plaintiff and the Class Members were unaware of the Wheel Configuration Defect and Defendants' misconduct when they purchased or leased their Class Vehicles.

93. Defendants' affirmative acts and omissions alleged herein were wrongfully concealed and carried out in a manner that precluded detection of both the acts and omissions themselves, and the existence, nature, extent, and scope of the Wheel Configuration Defect and its manifestations with respect to the Class Vehicles.

94. Defendants' misconduct in not disclosing the Wheel Configuration Defect prior to the time of the sale of the Class Vehicles, having been placed on notice of the frequent and reoccurring tire blowouts well before the end of the normal and expected life of the tires, was inherently self-concealing.

95. A reasonable person under the circumstances would have no cause to investigate the legitimacy of Defendants' conduct before purchasing or leasing a Class Vehicle and would have faced extreme difficulty in discerning the Wheel Configuration Defect that they had no reason to suspect in the first place.

96. As the misconduct was both self-concealing and affirmatively concealed by Defendants, Plaintiff and the Class Members had no knowledge of the misconduct, or of any facts or information that would have caused a reasonably diligent person to investigate whether misconduct existed until counsel revealed the defect to Plaintiff based upon extensive and also recent investigation.

97. Thus, the statute of limitations as to Plaintiff's and the Class Members' claims did not begin to run and has been tolled with respect to the claims that Plaintiff alleges in this Class Action Complaint and any others that might relate to it.

## CLASS ALLEGATIONS

98. Plaintiff incorporates by reference and realleges all foregoing paragraphs as if fully restated herein.

99. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated, pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

100. Plaintiff represents and is a member of the **California Class**, defined as:

All residents of California who (a) purchased and still own, and/or (b) lease or leased, a Class Vehicle.

101. Plaintiff represents and is a member of the **SBA Sub-Class One**, defined as:

> All residents of California who (a) purchased and still own, and/or (b) lease or leased, a Class Vehicle, who did not receive a prompt replacement of the Class Vehicle or prompt repair of the Class Vehicle, after delivering the Class Vehicle to an authorized dealership and/or repair facility for service or repairs.

102. Plaintiff represents and is a member of the **SBA Sub-Class Two**, defined as:

> All residents of California who (a) purchased and still own, and/or (b) lease or leased, a Class Vehicle, where service or repairs on the Class Vehicle were either not commenced within a reasonable time period or completed within thirty days after delivery of the Class Vehicle to an authorized dealership and/or repair facility for service or repairs.

103. Plaintiff represents and is a member of the **SBA Sub-Class Three**, defined as:

> All residents of California who (a) purchased and still own, and/or (b) lease or leased, a Class Vehicle, who were not provided access to authorized service and repair facilities, sufficient service literature and/or replacement parts to effect repairs during the warranty period on the Class Vehicle.

104. Unless otherwise stated, the term "Class" refers jointly and severally to the proposed Class, and the proposed SBA Sub-Class One, SBA Sub-Class Two, and SBA Sub-Class Three.

105. The SBA Sub-Class One, SBA Sub-Class Two, and SBA Sub-Class Three are together referred to as the "SBA Sub-Classes."

106. Excluded from the Class are Defendants and their board members, executive-level officers, attorneys, and immediate family members of any such persons; the Court, the Court's immediate family, and the Court staff; and any

person who asserts a personal injury or wrongful death claim caused by the defect.

107.   Members of the Class are referred to as "Class Members."

108.   Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons and vehicle models as warranted and as facts are learned through further investigation and discovery.

109.   **Numerosity.** Plaintiff does not presently know the number of members in the Class but believes the Class Members number in the thousands.

110.   Upon information and belief, for Defendants' S-Class vehicles, approximately 10,122 units were sold in 2023, approximately 15,056 were sold in 2022, and approximately 14,284 were sold in 2021.

111.   MBUSA reported sales for the fourth quarter of 2023 of 72,313 passenger cars, with sales in its Top-End segment up 15% for 2023 compared to 2022 with a total of 84,391 units sold.

112.   In its third quarter report for 2023, MBUSA noted "The S-Class saw a significant increase of 48% versus the same quarter last year, with 3,890 units in Q3 2023."[17]

113.   MBUSA has 49 authorized dealerships within California, as well as authorized dealerships throughout much of the United States.

114.   The Class is comprised of a sufficiently large group of individuals who are residents of California—believed to be in the thousands—and thus is so large that it is impracticable to join all members of the Class before the Court as individual plaintiffs.

115.   The joinder of the Class Members is practical and the disposition of their claims in the class action will provide substantial benefits both to the parties and

---

[17] https://media.mbusa.com/releases/release-9e83ddac310b96e17ffd9a209e1b2911-mercedes-benz-usa-reports-q3-2023-total-sales-of-90011-vehicles  (last accessed on February 2, 2024).

to this Court.

116. The Class Members can be identified through various sources including Defendants' own records, Polk automotive data, ownership records, government ownership records, and publication notice.

117. **Commonality and Predominance.** There is a well-defined community of interest in the questions of law and fact to the Class that predominate over questions which may affect individual Class Members, including the following:

a. Whether Class Members were residents of California at the time of their lease or purchase of Class Vehicles;

b. Whether the Class Vehicles have defective tires;

c. Whether the defect in the tires constitutes a material fact to an ordinary reasonable consumer;

d. Whether an ordinary reasonable consumer would have purchased a Class Vehicle or leased a Class Vehicle had the Wheel Configuration Defect been disclosed;

e. Whether an ordinary reasonable consumer would have paid less money to purchase or lease a Class Vehicle had they known of the Wheel Configuration Defect, and if so, how much less they would have paid;

f. Whether the Class Vehicles commanded a premium relative to their actual value in light of the undisclosed Wheel Configuration Defect;

g. Whether and when Defendants had actual or constructive knowledge of the Wheel Configuration Defect;

h. Whether Defendants had a duty to disclose the Wheel Configuration Defect to the Class and whether they fraudulently concealed the Wheel Configuration Defect;

i. Whether Defendants had and have a continuing duty to disclose the Wheel Configuration Defect to the Class;

j. Whether Defendants breached any or all applicable warranties with

respect to the Class Vehicles;

k. Whether Defendants breached other duties or violated other applicable laws by their misrepresentations and/or by their omissions, including their concealment of the Wheel Configuration Defect;

l. Whether Defendants breached their obligations to provide timely repairs for the Class Vehicles;

m. Whether and to what extent Defendants are liable for diminution in value, out-of-pocket expenses, and other losses incurred by the Class as a result of the Wheel Configuration Defect;

n. Whether Defendants should be declared legally and financially responsible for notifying the Class of the Wheel Configuration Defect;

o. Whether Defendants should be declared legally and financially responsible for notifying Class Members of their right to whatever relief to which the Class is entitled;

p. Whether and to what extent Defendants are obligated to pay actual and consequential damages to the Class as a result of the Wheel Configuration Defect and Defendants' associated misconduct;

q. Whether Defendants violated the SBA given the conduct alleged herein;

r. Whether Defendants violated the UCL given the conduct alleged herein;

s. Whether Defendants are liable for actual damages, and the amount of such damages;

t. Whether Defendants were unjustly enriched;

u. Whether Class Members are entitled to equitable relief, including prospective injunctive relief; and

v. Whether Class Members are entitled to declaratory relief.

118. **Typicality.** Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased the Vehicle with defective tires during the applicable class periods, as did each Class Member, and Plaintiff experienced significant delays

in the enjoyment of the Class Vehicles while needing repairs to, or replacements for, the Class Vehicles.

119.  Plaintiff and all Class Members sustained injuries arising out of Defendants' wrongful conduct and deception.

120.  Plaintiff is advancing substantially the same claims and legal theories on behalf of herself and all absent Class Members.

121.  **Adequacy.** Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff has no interests antagonistic to any Class Member.

122.  Absent a class action, the Class will continue to face the potential for irreparable harm. Additionally, these violations of law will be allowed to proceed without remedy, and Defendants will likely continue such illegal conduct.

123.  Plaintiff has retained counsel experienced in handling the same and/or similar class action claims as presented in this case.

124.  **Superiority.** A class action is a superior method of the fair and efficient adjudication of this controversy. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for Class Members individually to redress effectively the wrongs done to them. Even if Class Members could afford such individualized litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.

125.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and

belief, Class Members can be readily identified and notified based on, inter alia, Defendants' own records.

126. **Injunctive Relief.** Defendants have acted, and continue to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class in its entirety.

127. Certification of particular issues would move the litigation forward efficiently and would save money, time, and judicial resources for all involved, regardless of whether the action as a whole might be certified.

## CAUSES OF ACTION

### I.

### FIRST CAUSE OF ACTION

### VIOLATION OF CAL. CIV. CODE §§ 1790, ET SEQ.

### (SONG BEVERLY CONSUMER WARRANTY ACT)

### [As to All Defendants]

128. Plaintiff incorporates by reference and realleges all foregoing paragraphs as if fully restated herein.

### <u>Violation of Cal. Civ. Code § 1793.2(d)</u>

### (On Behalf of SBA Sub-Class One)

129. On or about December 5, 2022, Plaintiff delivered the Vehicle to Defendants and their representatives to repair the defects.

130. Defendants and their representatives have been unable to service or repair the Vehicle to conform to the applicable express warranty after a reasonable number of opportunities.

131. Defendants failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Cal. Civ. Code § 1793.2(d) and Cal. Civ. Code §1793.1(a)(2).

132. Plaintiff has been damaged by Defendants' failure to comply with their

obligations pursuant to Cal. Civ. Code § 1793.2(d) and Cal. Civ. Code §1793.1(a)(2) and brings this cause of action pursuant to Cal. Civ. Code § 1794.

133.   Defendants' failure to comply with their obligations under Cal. Civ. Code § 1793.2(d) was willful in that Defendants and their representatives were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts. Despite this, Defendants failed and/or refused to actually fully replace the Vehicle or make restitution.

134.   Upon information and belief, Defendants also failed to comply with their obligations under Cal. Civ. Code § 1793.2(d) with respect to members of the Sub-Class One, thereby damaging the members of the SBA Sub-Class One by failing to promptly replace the Class Vehicles or make restitution to members of the SBA Sub-Class One.

### Violation of Cal. Civ. Code § 1793.2(b)

### (On Behalf of SBA Sub-Class Two)

135. Although Plaintiff presented the Vehicle to Defendants' designated repair facilities for service and repair, Defendants failed to commence the service or repairs within a reasonable time period, and failed to service or repair the Vehicle so as to conform to the applicable warranty within 30 days, pursuant to Cal. Civ. Code § 1793.2(b).

136. At no time did Plaintiff extend the time for completion of repairs beyond the 30-day requirement.

137. Upon information and belief, Defendants also failed to commence service or repairs within a reasonable time period for some of the members of the California Class, and failed to service or repair the Vehicle so as to conform to the applicable warranty within 30 days, pursuant to Cal. Civ. Code § 1793.2(b).

138. Plaintiff and the members of the SBA Sub-Class Two have been damaged by

Defendants' failure to comply with their obligations pursuant to Cal. Civ. Code §1793.2(b), and thus, Plaintiff has a statutory cause of action against Defendants pursuant to Cal. Civ. Code § 1794.

139. Thus, Plaintiff, on behalf of herself and the SBA Sub-Class Two members, seeks the remedies provided in Cal. Civ. Code § 1794(b)(1), or alternatively, those set forth in Cal. Civ. Code § 1794(b)(2), including the diminution in the value of the Class Vehicles resulting from its defects.

140. Defendants' failure to comply with their obligation under Cal. Civ. Code §1793.2(b) was willful, in that Defendants and their representatives were aware that they were obligated to service or repair the Class Vehicles to conform to the applicable express warranties within 30 days, yet they failed to do so.

## **Violation of Cal. Civ. Code § 1793.2(a)(3)**

### **(On Behalf of SBA Sub-Class Three)**

141. Defendants failed to make available to the authorized service and repair facilities, sufficient service literature and replacement parts to effect repairs during the express warranty period.

142. Plaintiff and the SBA Sub-Class Three members have been damaged by Defendants' failure to comply with their obligations pursuant to Cal. Civ. Code §1793.2(a)(3), and therefore brings this cause of action pursuant to Cal. Civ. Code § 1794.

143. Defendants' failure to comply with their obligations under Cal. Civ. Code § 1793.2(a)(3) was willful, in that Defendants knew of their obligation to provide literature and replacement parts sufficient to allow their designated repair facility, or other authorized repair facilities, to effect repairs during the warranty period, yet Defendants failed to take any action to correct their failure to comply with the law.

144. Plaintiff and members of the SBA Sub-Class Three were damaged thereby.

## Violation of Cal. Civ. Code §§ 1791.2(a) & 1794

### (On Behalf of SBA Sub-Class One)

145. In accordance with Defendants' express warranties, Plaintiff delivered the Vehicle to Defendants' designated repair facilities in reasonable time. Defendants' designated repair facilities were Defendants' authorized representatives to perform said warranty repairs on Plaintiff's Vehicle.

146. Each time Plaintiff delivered the Vehicle to the designated repair facilities, Plaintiff notified Defendants, by and through their representatives, of the characteristics of the defects. Despite this, Defendants, by and through their authorized designated repair facilities, failed to repair the Vehicle, thus breaching the terms of the express warranty.

147. Plaintiff and the SBA Sub-Class One Members have been damaged by Defendants' failure to comply with their obligations under the express warranty, and therefore brings this cause of action pursuant to Cal. Civ. Code § 1794.

148. Defendants' failure to comply with their obligations under the express warranty was willful, in that Defendants were aware that they were obligated to repair the defects, but intentionally refused to do so and refused to repurchase the Vehicle.

149. Upon information and belief, Defendants also intentionally refused to repair and/or repurchase the Class Vehicles after one or more requests by members of the SBA Sub-Class One during the applicable express warranty period.

## Violation of Cal. Civ. Code §§ 1791.1 & 1794

### (On Behalf of SBA Sub-Class One)

150. Pursuant to Cal. Civ. Code § 1792, the sale of the Vehicle was accompanied by Defendants' implied warranty of merchantability. Pursuant to Cal Civ. Code §1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendants,

except that the duration is not to exceed a year.

151. Pursuant to Cal. Civ. Code § 1791.1(a), the implied warranty of merchantability means and includes that the Vehicle would comply with each of the following requirements: (1) the Vehicle would pass without objection in the trade under the contract description; (2) the Vehicle was fit for the ordinary purpose for which it was sold or used; (3) the Vehicle was adequately contained, packaged, and labeled; (4) the Vehicle would conform to the promises or affirmations of fact made on the container or label.

152. At the time of purchase, or within one (1) year thereafter, the Vehicle purchased by Plaintiff contained or developed the defects described within this Complaint.

153. Upon information and belief, at the time of purchase, or within one (1) year thereafter, the Class Vehicles purchased by the SBA Sub-Class One members contained or developed the defects described within this Complaint.

154. The existence of each of these defects in the Vehicle, and indeed the Class Vehicles, constitutes a breach of the implied warranty, because the Vehicle (1) did not pass without objection in the trade under the contract description; (2) was not fit for the ordinary purpose for which it was sold or used; (3) was not adequately contained, packaged, or labeled; and (4) did not conform to the promises or affirmations of fact made on the container or label.

155. Plaintiff and Sub-Class One members have thus been damaged by Defendants' failure to comply with their obligations under the implied warranty and therefore bring this Cause of Action pursuant to Cal. Civ. Code § 1794.

//

//

//

//

## II.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.

## (CALIFORNIA'S UNFAIR COMPETITION LAW)

### (On Behalf of California Class)

### [As to All Defendants]

156. Plaintiff incorporates by reference and realleges all foregoing paragraphs as if fully restated herein.

157. Plaintiff brings this count against Defendants on behalf of herself and the California Class for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL").

158. The UCL defines "unfair competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading advertising."

159. The UCL imposes strict liability. Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—only that such practices occurred.

160. Defendants' acts, omissions, practices, and nondisclosures alleged throughout this Complaint constitute business acts and practices.

161. Defendants' acts, omissions, practices and nondisclosures alleged throughout this Complaint constitute unlawful, unfair, and fraudulent business acts and practices because they have the capacity to deceive reasonable consumers, including Plaintiff and the California Class, as to the benefits and effectiveness of the Class Vehicles and, thereby, the defective tires.

162. Defendants had a duty to disclose the Wheel Configuration Defect based on their superior knowledge as the seller, marketer, and warrantor of the Class Vehicles, and as alleged in this First Amended Complaint.

163. Defendants violated Cal. Bus. & Prof. Code § 17200 by engaging in "unfair competition," including through "unlawful, unfair, or fraudulent business acts or practices" and "unfair, deceptive, untrue, or misleading advertising."

164. Defendants' violations include:

   a. advertising, marketing, distributing, selling, and leasing the Class Vehicles when Defendants knew those vehicles were defective and unable to reliably and safely perform their intended use;

   b. failing to disclose the true nature, scope, and extent of the Wheel Configuration Defect; and

   c. concealing material facts regarding the Class Vehicles—i.e., that the tires were defective and unable to reliably and safely perform their intended use.

165. Defendants' misconduct is "unlawful" under the UCL because it violates:

   a. the Song-Beverly Act, as alleged in Count 1; and

   b. the implied and express warranty provisions of Cal. Comm. Code § 2313, as alleged in Counts 3 and 4.

166. Defendants' acts and omissions constitute "unfair" business practices under the UCL because:

   a. Defendants engaged in a misleading and deceptive practice of knowingly or intentionally selling the Class Vehicles, all of which are equipped with defective wheels and tires;

   b. Defendants' acts and omissions offend an established public policy of transparency in the sale or lease of consumer vehicles, and they engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers; and

   c. the harm to Plaintiff and the California Class grossly outweighs the utility of Defendants' practices.

167. Defendants' deceptive practices constitute fraudulent business acts or practices because they deceived Plaintiff and are highly likely to deceive members of the consuming public into purchasing a Class Vehicle that, unbeknownst to Plaintiff and the California Class, were dangerously defective and unsuitable for their intended purpose.

168. Defendants have engaged in deceptive, misleading, unfair, unconscionable, and fraudulent acts and practices that have caused actual damages to Plaintiff and the California Class members, as described herein.

169. Defendants' intentional concealment of the Wheel Configuration Defect and their false, deceptive, misleading, and confusing representations and omissions would be material to any ordinary, average, and objectively reasonable consumer's decision whether to buy or lease a Class Vehicle, given that the defect is central to the vehicles' functionality and it pertains to the safe and reliable operation of the Class Vehicles.

170. No reasonable consumer, including Plaintiff, would have purchased or leased a Class Vehicle but for Defendants' acts, practices, omissions, and active concealment of the Wheel Configuration Defect.

171. The average, objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendants' acts and practices, including the misrepresentations and omissions described herein.

172. As a direct, foreseeable, and proximate result of Defendants' deceptive practices, Plaintiff and every member of the California Class:

   a. purchased or leased a vehicle they otherwise would not have purchased or leased or paid more than they otherwise would have;

   b. suffered an ascertainable loss of money, property, and value of the Class Vehicles; and

   c. suffered actual damages and other economic harms because of the latent Wheel Configuration Defect, including the losses described herein.

173. Due to Defendants' original and continuing misconduct alleged throughout this Complaint, Plaintiff and the California Class are entitled to prospective injunctive relief and declaratory relief, including an order, judgment, and other judicial action, decision, or proclamation:

    a. declaring that the Class Vehicles are defective;

    b. declaring that Defendants' conduct violated the UCL;

    c. enjoining Defendants from continuing to violate the UCL, in accordance with Bus. & Prof. Code § 17203; and

    d. compelling Defendants to commence a corrective advertising campaign.

174. Thus, Plaintiff and the California Class demand such prospective equitable relief and declaratory relief.

### III.

### THIRD CAUSE OF ACTION

### (BREACH OF EXPRESS WARRANTY)

### (On Behalf of California Class)

### [As to All Defendant]

175.  Plaintiff incorporates by reference and realleges all foregoing paragraphs as if fully restated herein.

176.  Plaintiff brings this count against Defendants individually and on behalf of the California Class for breach of express warranty.

177.  The Class Vehicles are "goods" as defined in Cal. Com. Code §§ 2105(1) and 10103(a)(8).

178.  Defendants are "merchant[s]," "seller[s]," and "lessor[s]" of the Class Vehicles under Cal. Com. Code §§ 2104(1), 10103(c), and 2103(1)(d), respectively.

179.  Plaintiff and the California Class are "buyers" and "lessees" as defined in Cal. Com. Code §§ 2103(1)(a), 10103(a)(14).

180.  Defendants issued an express written warranty for each Class Vehicle they

sold or leased, including that each Class Vehicle would be free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized service facilities, without charge, to fully correct defects in materials or workmanship.

181.  Such warranty formed the basis of the bargain with regard to Plaintiff's and the California Subclass members' purchase and lease of Class Vehicles.

182.  Defendants breached these warranties because:

a.  the Class Vehicles have a latent Wheel Configuration Defect that pose an unreasonable risk of manifesting and that in fact manifest in ways that pose a constant risk to safety and compromise reliability;

b.  Defendants concealed the existence of the Wheel Configuration Defect; and

c.  Defendants have refused and/or failed to provide the needed repairs and replacements to address and correct the Wheel Configuration Defect.

183.  Defendants' breach of their express warranties proximately caused the Plaintiff and California Class members (collectively) to suffer damages in excess of $5,000,000.00.

184.  Thus, Plaintiff, individually and on behalf of the California Class, seek all available monetary damages (including compensatory and/or liquidated damages and punitive damages); attorney's fees and costs; all available equitable, restitutionary, and injunctive relief; and all other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

## IV.

## FOURTH CAUSE OF ACTION

## (BREACH OF IMPLIED WARRANTY)

## (On Behalf of California Class)

## [As to All Defendants]

185.  Plaintiff incorporates by reference and realleges all foregoing paragraphs as

if fully restated herein.

186.   Plaintiff brings this count individually and on behalf of the California Class for breach of implied warranty.

187.   The Class Vehicles are "goods" as defined in Cal. Com. Code §§ 2105(1) and 10103(a)(8).

188.   The California Subclass members are "buyers" and "lessees" of the Class Vehicles as defined in Cal. Com. Code §§ 2103(1)(a) and 10103(a)(14).

189.   Defendants are "merchant[s]," "seller[s]," and "lessor[s]" as define in Cal. Com. Code §§ 2104(1), 10103(c), and 10103(a)(16).

190.   California law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Cal. Com. Code §§ 2314 and 10212.

191.   The Class Vehicles are not merchantable, and as such, Defendants breached their implied warranty, because:

    a.   the Class Vehicles do not have the quality that a buyer would reasonably expect due to being equipped with defective tires;

    b.   the Class Vehicles would not pass without objection in the automotive trade given the Wheel Configuration Defect;

    c.   the Wheel Configuration Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

    d.   the labeling for the Class Vehicles failed to disclose the Wheel Configuration Defect; and

    e.   the Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

192. Defendants' breach of their implied warranties proximately caused Plaintiff, the Class and the Subclasses, collectively, to suffer substantial monetary damages.

193. Thus, Plaintiff, individually and on behalf of the Class, seeks all available monetary damages (including compensatory and/or liquidated damages and punitive damages) in an amount no less than the difference in value between what Plaintiff and the Class reasonably believed they were paying for and the value of the vehicle they actually received; attorney's fees and costs; all available equitable, restitutionary, and injunctive relief; and all other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

**V.**

**FIFTH CAUSE OF ACTION**

**(UNJUST ENRICHMENT)**

**(On Behalf of the Class)**

**[As to All Defendants]**

194. Plaintiff incorporates by reference and realleges all foregoing paragraphs as if fully restated herein.

195. Unjust enrichment is a standalone claim in California. *See Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *Penikila v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212, 1215 (N.D. Cal. 2020); *Stevenson v. Allstate Ins. Co.*, No. 15-cv04788-YGR, 2016 WL 1056137, at *5 (N.D. Cal. Mar. 17, 2016). One remedy for unjust enrichment is disgorgement, which is "broader than restitution or restoration of what the plaintiff lost." *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1482–83 (2014), as modified (May 27, 2014). There are two types of disgorgement— restitutionary and non-restitutionary.

196. Typically, the defendant's benefit and plaintiff's loss are the same, but "many instances of liability based on unjust enrichment do not involve the restoration of anything the plaintiff previously possessed . . . include[ing] cases involving

the disgorgement of profits . . . wrongfully obtained." *Id*. (citation omitted). This is non-restitutionary disgorgement.

197. The elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another.

198. Plaintiff and Class Members conferred non-gratuitous benefits on Defendants by essentially paying more for a Class Vehicle than the Class Vehicle was worth.

199. Plaintiff and Class Members allege that Defendants owe them money for the conduct alleged herein.

200. An undue advantage was taken from Plaintiff's and Class Members' lack of knowledge of the deception, whereby money was extracted to which Defendants had no legal right due to a material defect. Thus, Defendants are indebted to Plaintiff and the Class in a sum equal to the difference between what Plaintiff and Class Members paid for their Class Vehicle and what said Class Vehicle was actually worth absent the Wheel Configuration Defect.

201. Defendants are therefore indebted to Plaintiff and the Class in a sum certain for money had and received by Defendants, which Defendants in equity and good conscience should not retain.

202. Defendants are liable to Plaintiff and the Class Members in the amount unjustly enriched.

203. Defendants' retention of any benefit collected directly and indirectly from Plaintiff and the Class violates principles of justice, equity, and good conscience. As a result, Defendants have been and continue to be unjustly enriched.

204. Plaintiff and Class Members are entitled to recover from Defendants all amounts that Defendants have wrongfully and improperly obtained from the purchase and or lease of the defective Class Vehicles, and Defendants should be required to disgorge to Plaintiff and the Class the benefits they unjustly

obtained.

205. Defendants accepted or retained such benefits with knowledge that the rights of Plaintiff and the Class were being violated for financial gain. Defendants have been unjustly enriched in retaining the revenues and profits from Plaintiff and the Class, which retention under these circumstances is unjust and inequitable.

206. As a direct and proximate result of Defendants' unlawful practices and retention of the monies paid by Plaintiff and the Class in excess of what was promised, Plaintiff and the Class Members have all suffered concrete injury, including, but not limited to, monetary loss in connection with their payments made to Defendants.

207. Defendants' retention of the non-gratuitous benefits on them by Plaintiff and the Class would be unjust and inequitable.

208. Plaintiff and Class Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendants in a manner established by this Court.

209. Plaintiff and the Class request the Court enter an order awarding them restitution and rescission based on their claim for unjust enrichment.

210. Plaintiff and the Class therefore also seek pre-and-post judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Civ. Proc. Code § 1021.5, any common law "private attorney general" equitable doctrine, "common fund" doctrine, "substantial benefit" doctrine, and/or any equitable principles of contribution and/or method of awarding attorneys' fees and costs.

//

//

//

//

# VI.

## SIXTH CAUSE OF ACTION

## (FRAUDULENT CONCEALMENT)

### (On Behalf of the Class)

### [As to All Defendants]

211. Plaintiff incorporates by reference and realleges all foregoing paragraphs as if fully restated herein.

212. Plaintiff brings this count against Defendants on behalf of herself, the Class for fraudulent concealment based on the particular misconduct alleged throughout this Complaint and explained below.

213. **Duty**. Defendants had and continue to have a duty to disclose the existence, nature, and extent of the Wheel Configuration Defect because:

    a.  the Class Vehicles' wheels and tires are central to the safe and reliable function of the Class Vehicles as a whole;

    b.  Defendants were in a superior position to know that the Wheel Configuration Defect existed as the assembler(s), distributor(s), marketer(s), and/or warrantor(s) of the Class Vehicles, and Defendants remain in that position as to the vast majority of unwitting Class Members;

    c.  Plaintiff and the Class Members were not involved in the design or manufacture of the Class Vehicles, or the tires, and as such could not be expected to learn or know about the existence and cause of the Wheel Configuration Defect;

    d.  Defendants knew that ordinary reasonable consumers would expect the Class Vehicles to be free of significant defects central to the function of the vehicles such that the defect would constitute a material fact in any purchasing or leasing decision, i.e., it would have influence on any and every reasonable consumer's purchasing or leasing decision, including

whether and how much to pay to purchase or lease a vehicle, including with respect to the tires; and

e. Defendants made no formal public announcements about the frequency and reoccurrence of the premature tire failure for the affected vehicles, while Defendants' public pronouncements and representations in marketing of the Class Vehicles were uniformly positive and consistent in terms of their luxury theme and content, thereby giving rise to a duty to tell the whole truth about the Class Vehicles.

214. **Concealment.** Defendants concealed the Wheel Configuration Defect by:

a. falsely representing that the Class Vehicles—including their wheels and tires—were safe, merchantable, and fit for their intended use;

b. knowingly selling and profiting from vehicles equipped with defective wheels and tires while remaining silent as to the defect with the intent and purpose of ensuring that prospective customers would remain unaware of the defect and would purchase or lease the Class Vehicles without consideration of how the defect affected the value of the Class Vehicles;

c. purposefully withholding the existence of the Wheel Configuration Defect from dealerships, retailers, service facilities, and other businesses that sell, inspect, service, and maintain vehicles so that the public would remain ignorant of the defect and continue to purchase the Class Vehicles;

d. failing to recall the Class Vehicles or to otherwise alert the public to the existence, nature, and extent of the Wheel Configuration Defect; and

e. misrepresenting and/or failing to disclose the cause of various manifestations of the Wheel Configuration Defect when consumers experienced such problems, as alleged above while also misrepresenting the cause of tire failures in the Class Vehicles when responding to

warranty claims and questions from consumers, dealers, and service facilities.

219. **Causation.** Defendants' deceptive, misleading, unfair, unconscionable, and fraudulent acts and practices have directly and foreseeably caused damages to Plaintiff and the Class Members, as alleged above. In particular:

    a. Defendants' intentional concealment of the Wheel Configuration Defect and their false, deceptive, misleading, and confusing representations and omissions would influence any ordinary, average, and reasonable consumer's decision whether to buy or purchase a Class Vehicle, given that the defect pertains to the safe and reliable operation of the Class Vehicles.

    b. No reasonable consumer, including Plaintiff, would have purchased or leased a Class Vehicle but for Defendants' acts, practices, omissions, and active concealment of the Wheel Configuration Defect, as described above;

    c. any ordinary and objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendants' acts and practices, including their concealment of the Wheel Configuration Defect;

    d. as a direct, foreseeable, and proximate result of Defendants' deceptive practices, Plaintiff and the Class Members have sustained economic injury at the time of purchase or lease as well as other economic losses alleged above.

220. **Damages.** Plaintiff and the Class Members demand all available relief including all available compensatory and/or liquidated damages in an amount no less than the difference in value between what Plaintiff and the Class Members reasonably believed they were paying for and the value of the vehicle they actually received; attorney's fees and costs; all available

equitable, restitutionary, and injunctive relief; and other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

221. Additionally, Defendants' intentional acts of deceit were carried out deliberately, maliciously, and wantonly, knowing full well—and therefore intending—that their deceit would cause economic harm to Plaintiff and the Class for their own aggrandizement. Defendants knew that their misconduct, including their concealment of the material Wheel Configuration Defect, posed a safety risk to Plaintiff and the Class Members as well as impacted the reliability of the Class Vehicles, yet they carried out their scheme for the purpose of saving money, and increasing their profits and their market share.

222. Defendants' reprehensible conduct thus warrants the imposition of punitive damages to punish and deter them and others from engaging in the same or similar schemes in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff having set forth the claims for relief against Mercedes-Benz USA, LLC, Mercedes-Benz AG, and Mercedes-Benz Group AG herein, respectfully requests this Court enter a Judgment against Defendants, and each of them, as follows:

a. that this action be certified as a class action;

b. that Plaintiff be appointed as the representative of the California Class and the SBA Sub-Classes;

c. that Plaintiff's attorneys listed below be appointed Class Counsel;

d. for an order declaring Defendants' conduct to be unlawful;

e. for an order compelling Defendants to make restitution to Plaintiff, the California Class's and SBA Sub-Classes' members in an amount to be proven at trial;

f. for actual, compensatory, statutory and/or liquidated damages;

g. for punitive damages;

h.  under the Song-Beverly Consumer Warranty Act: (i) reimbursement of the price paid for the Class Vehicles; (ii) actual damages subject to proof at trial resulting from Defendants' failure to comply with their obligations under the Song-Beverly Act; (iii) a sum equal to the aggregate amount of costs and expenses; (iv) a determination that acceptance of the Class Vehicles have been properly revoked by Plaintiff and the SBA Sub-Classes and for damages incurred in revoking acceptance; (v) a refund of the purchase price paid by Plaintiff and the SBA Sub-Classes for the Class Vehicles; and (vi) cancellation of the Original Purchase Agreement and payment in full of the balance of same for Plaintiff and the SBA Sub-Classes;

i.  for injunctive, including public injunctive relief, and other equitable relief as alleged herein and as necessary to protect the interests of Plaintiff, and members of the Class and SBA Sub-Classes, and to prohibit Defendants from engaging in the unlawful, unfair, deceptive and fraudulent acts described above, including pursuant to, *inter alia*, Bus. & Prof. Code § 17203;

j.  for an order that Defendants engage in a corrective advertising campaign with regard to the Wheel Configuration Defect;

k.  for an order of restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the members of the California Class and SBA-Sub-Classes as a result of their unlawful, unfair, and fraudulent business practices;

l.  for cy pres/fluid recovery, as may be appropriate;

m.  for costs of this action and out-of-pocket expenses;

n.  for attorneys' fees, pursuant to, *inter alia*, the common fund doctrine, Cal. Civ. Proc. Code § 1021.5, and the Song-Beverly Act;

o.  for pre- and post-judgment interest at the legal rate;

p.  and for such other and further relief that the Court deems available and

1    proper.

2

3    Dated:  September 23, 2025              **BLC LAW CENTER, APC**

4

5                                            By:  /s/ Ahren A. Tiller

6                                                Ahren A. Tiller, Esq.
                                                Attorney for Plaintiff
7                                                MAHSHID WADEEA
                                                E-Mail: ahren.tiller@blc-sd.com
8

9                                            **KAZEROUNI LAW GROUP, APC**
                                            Abbas Kazerounian, Esq. (SBN: 249203)
10                                           ak@kazlg.com
                                            Gil Melili, Esq. (SBN: 337116)
11                                           gil@kazlg.com
                                            245 Fischer Avenue, Suite D1
12                                           Costa Mesa, CA 92626
                                            Telephone: (800) 400-6808
13                                           Facsimile: (800) 520-5523
14
15
                                            **KAZEROUNI LAW GROUP, APC**
16                                           Jason A. Ibey, Esq. (SBN: 284607)
                                             jason@kazlg.com
17                                           321 N. Mall Drive, Suite R108
                                            St. George, Utah 84790
18                                           Telephone: (800) 400-6808
                                            Facsimile: (800) 520-5523
19
20
21
22
23
24
25
26
27
28

1    ## DEMAND FOR JURY TRIAL

2    Pursuant to the Seventh Amendment to the Constitution of the United States

3    of America, Plaintiff is entitled to, and demands, a trial by jury on all issues

4    triable by a jury.

5

6    Dated:  September 23, 2025                **BLC L**AW **C**ENTER**, APC**

7

8

9    By: /s/ Ahren A. Tiller

10   Ahren A. Tiller, Esq.
     Attorney for Plaintiff
11   MAHSHID WADEEA
     E-Mail: ahren.tiller@blc-sd.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28