UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASHID WADEEA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC, a Delaware Corporation,<br><br>Defendant. | Case No.:  24-cv-1587-JLS-DDL<br><br>**ORDER RE PRODUCTION OF DOCUMENTS CONCERNING ROAD HAZARDS** |

## I.

## <u>INTRODUCTION</u>

The issue is whether documents reflecting tire damage due to "road hazards" are relevant to a claim or defense under Federal Rule of Civil Procedure 26 and responsive to Plaintiff's requests for production ("RFPs").  Mercedes-Benz USA, LLC ("MBUSA") says "no" and contends it has communicated this position to Plaintiff repeatedly throughout the litigation.  Plaintiff disagrees and responds she was unaware that MBUSA withheld documents reflecting tire issues due solely to "road hazards" as non-responsive to Plaintiff's RFPs.  After learning of this issue at a hearing on February 13, 2026, the Court directed the parties to submit further briefing on their respective positions.  *See* Dkt. Nos. 235, 243.  This Order follows.

## II.

## <u>DISCUSSION</u>

### A.    <u>Production Of Repair Orders</u>

On December 3, 2025, the Court granted Plaintiff's motion to compel MBUSA to produce repair orders maintained by Mercedes-Benz dealers, finding that MBUSA "has legal control over the repair orders and is obligated to produce a subset of orders from California Mercedes-Benz dealerships that is proportionate to the needs of the case." Dkt. No. 206 ("December 3 Order") at 2. The December 3 Order expressly found that the repair orders "are relevant to Plaintiff's claims" in that they "have a clear relation to the alleged defect and Defendant's knowledge thereof." *Id.* at 10. The Court directed the parties to meet and confer regarding the appropriate scope of repair orders to be produced. The parties reached agreement on the specific dealerships whose repair orders MBUSA would produce, and MBUSA produced the repair orders in January 2026. Dkt. Nos. 185, 187.

MBUSA did not seek clarification or reconsideration of the December 3 Order's determination that repair orders maintained by the dealerships are relevant to Plaintiff's claims. Nor did MBUSA advise the Court that it intended to produce a limited subset of the repair orders. Rather, MBUSA asserts that, following the December 3 Order, it agreed to produce repair orders from 23 dealerships but that "when this Court expanded search terms to include 'wheel OR rim,' MBUSA was required to review the dealerships' repair orders to determine which documents were responsive to plaintiff's RFP 42." Dkt. No. 235 at 13. Specifically, MBUSA says it reviewed 5,262 repair order documents obtained from the dealerships and produced repair orders indicating "there was a tire replacement due to bubbles, cracks or a blow out" and repair orders indicating a "tire replacement" with no further information. Dkt. No. 235-1 at 3. However, if a repair order "was simply about routine maintenance" or "was solely related to an impact or road hazard (such as a screw, nail, pothole, curb)," then MBUSA marked it as non-responsive to RFP No. 42 and did not produce it. *Id.*

/ / /

24-cv-1587-JLS-DDL

MBUSA's argument that it properly reviewed the repair orders for responsiveness is unpersuasive. The December 3 Order held that the repair orders maintained by Mercedes-Benz dealerships are within MBUSA's legal control and are relevant to Plaintiff's claims. The only remaining issue was "the number of dealers from which [MBUSA] will obtain repair orders and the identity of those dealers." Dkt. No. 206 at 10. The December 3 Order did not authorize MBUSA to further limit its production to the repair orders that MBUSA deemed responsive to search terms. And MBUSA's assertion that a prior order issued months earlier in July 2025 directing MBUSA to utilize "wheel OR rim" as search terms for MBUSA's custodial documents (Dkt. No. 45 at 3) somehow required MBUSA to limit its production of repair orders was not raised with the Court and is not consistent with the December 3 Order.

According to MBUSA, it reviewed 5,262 repair order documents, produced 1,332 of them and determined the remaining 3,930 documents were not responsive to RFP No. 42. Dkt. No. 235-1 at 5. For the foregoing reasons, the Court concludes that all the repair orders collected by MBUSA fall within the scope of the December 3 Order and ORDERS MBUSA to produce the remaining 3,930 repair order documents by not later than May 4, 2026.

**B.      Production of Custodial Documents**

MBUSA explains that it agreed to run 60 search terms across its custodial data and that it produced documents responsive to Plaintiff's RFPs using the same review criteria described above. Dkt. No. 235-1 at 6-12. Applying this criteria, MBUSA produced 1,100 documents and determined that 33,655 documents were non-responsive. *Id.* at 13. MBUSA notes that it "cannot ascertain the number of documents that were marked non-responsive as a result of road hazards versus other issues," such "other issues" including, for example, a document containing the search term "wheel" that refers to a "steering wheel," which all parties agree is not relevant to a claim or defense. *Id.*

The parties dispute whether MBUSA's discovery responses or meet and confer communications put Plaintiff on notice of the criteria that MBUSA utilized to determine

24-cv-1587-JLS-DDL

whether documents identified through search terms were responsive to Plaintiff's RFPs. Plaintiff argues that MBUSA's May 2025 discovery responses stating it would produce documents "related to the alleged defect on tires sold with the putative Class Vehicles" did not state that MBUSA was deeming documents pertaining to "road hazards" as non-responsive.  However, in a Joint Status Report filed on October 10, 2025, the parties advised:

> The final item in Plaintiff's email is regarding the volume of MBUSA's ESI production due to its responsiveness rate. MBUSA states that its responsiveness rate reflects overbroad search terms and that it limited its responses to many RFPs to only producing documents concerning the alleged defect as it relates to putative Class Vehicles, but *it has found extremely few documents that relate to Plaintiff's spontaneous tire blowout theory*. Plaintiff still has not identified a potential cause or source of the blowouts, and without such specificity there are very limited numbers of responsive documents. MBUSA further states that Plaintiff has failed to identify any specific deficiencies in MBUSA's production or pointed to any particular documents that are missing from its production (other than those described in paragraph 6 above) and are in MBUSA's possession, custody, or control and MBUSA agreed to produce in response to a specific RFP. Further, on October 9, 2025, MBUSA sent Plaintiff an email identifying sources that support the responsiveness rate of MBUSA's productions.

Dkt. No. 155 at 4 (emphasis added).  Regardless of whether MBUSA's discovery responses put Plaintiff on notice that MBUSA was withholding documents pertaining to tire damage cause solely by "road hazards," the record reflects that MBUSA had communicated the limitations on its document production to Plaintiff by not later than October 2025. Moreover, the Court provided the parties an opportunity to raise issues with respect to MBUSA's document production at a subsequent status conference on November 13, 2025, and Plaintiff did not raise this issue.  *See* Dkt. No. 166.  Accordingly, MBUSA has a strong

argument that Plaintiff did not timely raise this issue pursuant to the Court's Chambers Rules.

Even if the Court were to conclude that Plaintiff timely raised this issue, the relief to be granted is unclear. The record does not clearly reflect any specific document that hit on one or more of the search terms but that MBUSA deemed non-responsive because it pertained solely to "road hazards," and the Court will not require MBUSA to re-review the 33,655 documents deemed non-responsive based on the current record. After all, by agreeing to use the 60 search terms, MBUSA did not thereby agree that all documents containing those search terms were responsive to Plaintiff's RFPs and relevant to a claim or defense. *See SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*, No. CV-21-01076-PHX-JAT, 2023 WL 2585296, at *3 (D. Ariz. Mar. 21, 2023) ("by running a relevant search term, the responding party does not waive relevance objections to the documents responsive to the search term"). In the interests of resolving this issue efficiently, the Court will perform a targeted *in camera* review of MBUSA's document production as set forth below.

## III.

## CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.      By not later than **May 6, 2026**, MBUSA shall produce the remaining 3,930 repair order documents.

2.      By not later than **May 6, 2026**, MBUSA shall provide to the Court for *in camera* review the following: (1) the first 200 pages of the 33,655 custodial documents containing search terms that MBUSA deemed non-responsive to Plaintiff's RFPs and (2) the first 20 custodial documents containing search terms that were deemed non-responsive because they pertain solely to "road hazards." MBUSA shall provide the foregoing documents with Bates numbers to the Clerk's Office either in hard copy with each of the two document categories in a separate binder or on a flash drive with each of the two document categories in a single PDF file.

24-cv-1587-JLS-DDL

3.    The Court will issue a further order following the *in camera* review.

**IT IS SO ORDERED.**

Dated: April 27, 2026

_____
Hon. David D. Leshner
United States Magistrate Judge

24-cv-1587-JLS-DDL